UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Santiago Teran, ) | C/A No. 5:14-04728-RMG-KDW | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| Maria Cruz, Warden; Tim Johnson, AWCOS; ) | Report and Recommendation | |
| Victor Loranth, Md. Dirt.; and Gloria Urrea, ) | | |
| HSA, ) | | |
| ) | | |
| Defendants. ) | | |
| _____) | | |

Plaintiff, a pro se prisoner, brings this action alleging claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). This matter is before the court on Defendants' Motion for Summary Judgment, filed on August 6, 2015. ECF No. 39. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff on August 7, 2015, of the dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' Motion. ECF No. 40. On October 14, 2015, Plaintiff filed a Response in Opposition to Defendants' Motion, ECF No. 50.[1] This Motion is now ripe for consideration.

I.     Background

Santiago Teran ("Plaintiff") is presently confined at FCI Williamsburg in Salters, South Carolina. ECF No. 20 at 2. Plaintiff filed three Complaints, and the Second Amended Complaint ("Complaint") is the operative pleading. *See id.* In his Complaint, Plaintiff alleges

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Local Civil Rule 73.02(B)(2), D.S.C, which provides for all pretrial proceedings in certain types of matters be referred to a United States Magistrate Judge. Because Defendants' Motion is dispositive, the undersigned enters this Report for the district judge's consideration.

Defendants were deliberately indifferent to his medical care. *Id.* Specifically, Plaintiff maintains that Defendant Cruz knew of his medical condition that needed "serious medical intervention" and that surgery had been recommended since 1996 by Dr. Stephen Davis. *Id.* at 4. Additionally, Plaintiff alleges that Defendant Cruz "knew of the substantial risk of serious harm and failed to respond rasonably (sic) to [his] needs of [his] hiatal hernia with ulcer." *Id.*

Plaintiff also alleges that Defendant Johnson, who was the head supervisor of the medical department, "had knowledge of [Plaintiff's] medical needs but failed to proceed [in an] adequate manner, and intentionally ignore[d] [his] needs for a surgery of [his] hiatal hernia with ulcer." *Id.* Plaintiff maintains that Defendant Johnson had knowledge of his medical records and Defendant Johnson acknowledges the records showed him that Plaintiff needed surgery as recommended by several doctors. *Id.*

Regarding Defendant Loranth, Plaintiff alleges that he had been complaining to Defendant Loranth about his hiatal hernia with ulcer since September of 2009. *Id.* at 5. Plaintiff maintains that he told Defendant Loranth that he wanted the surgery that was recommended by Dr. Davis. *Id.* Specifically, Plaintiff alleges: "I have told him all the time that I can't stand the pain no more and the medication was doing a lot of harm to me due to side effects and only helps me to hold my acid but it had to be increased 3 times more than regular because of that." *Id.* Though Plaintiff alleges he repeatedly told Defendant Loranth that he needed surgery, Plaintiff represents that he denied Plaintiff access to an outside doctor. *Id.* However, once Plaintiff initiated the grievance process, Plaintiff maintains that Defendant Loranth sent him to an outside hospital but delayed Plaintiff's appointments and ignored recommendations. *Id.*

Plaintiff alleges that Defendant Loranth eventually sent him to MUSC (the Medical University of South Carolina) for evaluation after a prison advocate in Texas inquired about his situation. *Id.* Plaintiff maintains that surgery was again recommended after he was evaluated at MUSC and the surgery was "done on Dec. 17-2014." *Id.* Plaintiff argues that it took Defendant Loranth "5 years to do his job knowing the substantial risk of serious harm that he put [Plaintiff] in that placed [him] in agony." *Id.* Plaintiff maintains that Defendant Loranth intentionally failed to respond reasonably to his medical needs. *Id.*[2]

Concerning his case against Defendant Urrea, Plaintiff alleges that she was in a job that obligated her to respond to his situation and his medical needs. *Id.* at 6. He alleges that Defendant Urrea knew all the time that he needed surgery because she was dealing with his medical records and file every day because of "an investigation [that] was conducted on her Department." *Id.* Additionally, Plaintiff represents that Defendant Urrea also knew of Dr. Davis' recommendation of surgery. *Id.* Plaintiff alleges that Defendant Urrea "still delayed and denied [him] a medical intervention and failed to respond reasonably to [his] medical needs." *Id.*

After making claims against each Defendant, Plaintiff gives a summary of his medical history. *Id.* at 7. Plaintiff represents that he was diagnosed with a hiatal hernia with ulcer in the upper gastrointestinal ("G.I.") in May of 1996. *Id.* Plaintiff maintains that in July of 1996, Dr. Davis recommended he have surgery. *Id.* Plaintiff contends that the diagnosis and recommendation occurred while he was in FCI Terminal Island and that later he was transferred to another institution where he kept complaining about getting surgery. *Id.* Plaintiff maintains that as soon as he got to FCI Williamsburg he asked Defendant Loranth

---

[2] After making his assertions regarding Defendant Loranth, Plaintiff alleges that other persons, not named as Defendants, were involved in the alleged deprivation of his medical care. *See id.*

3

for hernia surgery and explained everything to him. *Id.* Plaintiff alleges that Defendant Loranth told Plaintiff he did not need surgery. *Id.*

Thereafter, Plaintiff represents he started the grievance process in response to Defendants' inaction but was still denied the surgery and his request that he be seen by an outside specialist. *Id.* Plaintiff represents that an outside specialist eventually recommended "the maximum treatment" because his situation "got real bad." *Id.* Ultimately, Plaintiff represents that they proceeded with the surgery. *Id.* However, Plaintiff alleges that he is damaged "for life," and Defendants allowed his entire digestive system to degenerate. *Id.* Plaintiff represents that he received hernia surgery on December 17, 2014, and he is "still in recovery." *Id.*

Plaintiff requests a jury trial and "$5,000,000.00 dollars and $1,000.00 per day for past and future pain and suffering on per day basis and proper and human medical treatment." *Id.* at 8.

II.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986). The movant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs,* 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324-25. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

   III.   Analysis

Defendants make several arguments in their Summary Judgment Motion. The undersigned will address each argument in turn.

   A.   Failure to State a Claim

Initially, Defendants maintain that Plaintiff has failed to state a claim because he does not allege that any of his constitutional rights were violated. ECF No. 39 at 19. However, Defendants concede that Plaintiff "claims the Defendants have shown a deliberate indifference to his medical care." *Id.* Moreover, Defendants maintain that Plaintiff has not

shown how any of his constitutional rights have been violated by any of the named Defendants. *Id.* The undersigned disagrees.

Rule 8 of the Federal Rules of Civil Procedure requires that complaints shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose behind Rule 8 is to give the defendant fair notice of the claims and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, the plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." *Id.* The factual allegations must be enough to raise a right to relief above the speculative level. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The *Twombly* Court noted that defendants will not know how to respond to conclusory allegations, especially when "the pleadings mentioned no specific time, place, or person involved in the alleged conspiracies." *Twombly*, 550 U.S. at 565 n.10. However, *Twombly* did not expressly hold that a plaintiff must assert specific time, place, and persons involved in order to comply with Rule 8. *See Ashcroft*, 556 U.S. at 678 (internal *Twombly* citation omitted) ("As the Court held in *Twombly,* [] the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."); *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 325 (2d Cir. 2010) (finding the *Twombly* court noted, in dicta, that the pleadings there mentioned no specific time, place, or person involved in the alleged conspiracies and rejected defendants' argument that *Twombly* requires a plaintiff identify the specific time, place, or person related to each conspiracy allegation); *Milliken & Co. v. CNA Holdings, Inc.*, 3:08-

6

CV-578-RV, 2011 WL 3444013, at *5 (W.D.N.C. Aug. 8, 2011) (finding other courts have held a plaintiff can survive a motion to dismiss even though hefails to answer who, what, when and where).

Plaintiff is proceeding pro se in this case. Pro se complaints should be construed liberally by this court and are held to a less stringent standard than those drafted by attorneys. *Estelle v. Gamble,* 429 U.S. 97, 105 (1976). Dismissal of a pro se complaint for failure to state a valid claim is only appropriate when, after applying this liberal construction, it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner,* 404 U.S. 519 (1972). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *See Weller*, 901 F.2d at 390-91.

Though Plaintiff does not specifically state that his Eighth Amendment right to be free from cruel and unusual punishment was violated, the undersigned finds that Plaintiff's Complaint meets Rule 8 pleading requirements. Here, Plaintiff alleges that Defendants were aware he suffered from a serious medical condition and denied or delayed necessary treatment. Therefore, Plaintiff has alleged sufficient facts to comply with Rule 8, and the undersigned declines to recommend that the district court dismiss Plaintiff's Complaint for failure to state a claim.

B.     Deliberate Indifference to Medical Needs

Defendants maintain that Defendant Loranth was not deliberately indifferent to Plaintiff's medical needs. ECF No. 39 at 20. Defendants do not dispute that Plaintiff had a hiatal hernia, but Defendants argue that "the record is totally void that [Plaintiff] ha[d] an

7

ulcer with his hiatal hernia." *Id.* at 22. Further, despite Plaintiff's claims, Defendants contend that Plaintiff's condition did not rise to the level of a "serious medical need" when he first arrived at FCI Williamsburg. *Id.* When Plaintiff arrived, Defendants represent that it was Defendant Loranth's professional medical opinion that Plaintiff's "hiatal hernia was not life threatening, and did not place [Plaintiff] in any imminent danger of serious physical injury, and invasive procedure, such as the Nissen fundoplication,[3] was not medically warranted." *Id.* at 22-23.

To prevent the entry of summary judgment on a cause of action for deliberate indifference to medical needs, a plaintiff must present evidence sufficient to create a genuine issue of fact that the defendant was deliberately indifferent to his serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 832-35 (1994); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. at 104-05. Deliberate indifference to a serious medical need requires proof that each defendant knew of and disregarded the risk posed by the plaintiff's objectively serious medical needs. *Farmer*, 511 U.S. at 846. "Negligence or malpractice in the provision of medical services does not constitute a claim under § 1983. The standard for § 1983 liability is deliberate indifference to serious medical needs." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Miltier v. Beorn*, 896 F.2d 848, 851

---

[3] During fundoplication surgery, the upper curve of the stomach (the fundus) is wrapped around the esophagus and sewn into place so that the lower portion of the esophagus passes through a small tunnel of stomach muscle. This surgery strengthens the valve between the esophagus and stomach (lower esophageal sphincter), which stops acid from backing up into the esophagus as easily. This allows the esophagus to heal. This procedure can be done through the abdomen or the chest. The chest approach is often used if a person is overweight or has a short esophagus. This procedure is often done using a laparoscopic surgical technique. Outcomes of the laparoscopic technique are best when the surgery is done by a surgeon with experience using this procedure. If a person has a hiatal hernia, which can cause gastroesophageal reflux disease (GERD) symptoms, it will also be repaired during this surgery. *See* http://www.webmd.com/heartburn-gerd/fundoplication-surgery-for-gastroesophageal-reflux-disease-gerd (last visited Dec. 1, 2015).

(4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837 (holding an assertion of mere negligence or malpractice is not enough to state a constitutional violation, plaintiff must allege and demonstrate "[deliberate indifference] . . . by either actual intent or reckless disregard."). In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." 896 F.2d at 851. The Fourth Circuit Court of Appeals defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreye*, 535 F.3d 225, 241 (4th Cir. 2008) (internal citation omitted). A medical condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

In his Response to Defendants' Motion, Plaintiff maintains that there are material facts in dispute. ECF No. 50 at 4-5. Specifically, Plaintiff argues that after performing an EGD,[4] Dr. Carlos Alejo stated the results "showed a fairly large hiatus hernia." *Id.* at 5. Additionally, Plaintiff represents that Dr. Alejo stated "there was a medium-sized mixed hiatus hernia visible in the GE junction." *Id.* Further, Plaintiff represents that Dr. Adam Rogers, per an esophagram, "verified Plaintiff's case and controversy, that there is an ongoing major material fact in dispute. . . ." *Id.*[5]

Here, Plaintiff admits he eventually had surgery on his hiatal hernia. However, he alleges that the surgery should have been performed several years prior. Based on the

---

[4] Esophagogastroduodenoscopy.
[5] According to Plaintiff, Dr. Alejo and Dr. Rogers are surgeon consultants authorized by Defendant Loranth and the Southeastern Regional Office to examine Plaintiff. ECF No. 50 at 5.

evidence submitted by both Plaintiff and Defendants, the undersigned finds that Plaintiff has received medical treatment on numerous occasions for several health-related issues, including his hiatal hernia. Therefore, the undersigned finds that Plaintiff has failed to allege that he has suffered from a serious medical injury for which he received *no* medical treatment. However, Plaintiff appears to allege that he suffered from a serious medical condition, and his treatment was *delayed*. Specifically, Plaintiff appears to allege that SCDC staff delayed sending him to a surgeon to have his hiatal hernia removed. The undersigned has thoroughly reviewed all of Plaintiff's medical encounters submitted to the court and finds there is no evidence of a delay in medical treatment that exacerbated an existing medical condition or led to a permanent loss.

Defendants have submitted the Declaration of Victor Loranth in support of their Motion. *See* ECF No. 39-5. In his Declaration, Defendant Loranth represents that he is the Clinical Director and functions as the primary physician at FCI Williamsburg. *Id.* at ¶ 1. Defendant Loranth attests that Plaintiff arrived at FCI Williamsburg on September 25, 2009. *Id.* at ¶ 7. Defendant Loranth avers:

> On this same date, [Plaintiff] had an initial Health Screen where he indicated he had a history of chronic medical conditions including but not limited to, gastritis and gastroesophagheal reflux disease (GERD). There is no indication in his initial Health Screen that [Plaintiff] had a hiatal hernia, and he did not complain of any pain related to his hiatal hernia or GERD issues.

*Id.* Plaintiff's medical records confirm Defendant Loranth's representations to the court. *See* ECF No. 39-6 at 1-6. Specifically, Plaintiff's "current medical conditions" listed in the intake report were "Non-Insulin Dependent Diabetic, Hypertension, Depression, [and] Esophageal Reflux." *Id.* at 3. As represented by Defendant Loranth, there was no indication Plaintiff had a hernia based on this medical record. *See id.*

10

Defendant Loranth attests that he first met with Plaintiff on October 1, 2009, and noted Plaintiff had a hiatal hernia and was taking the non-formulary medication Prilosec for his GERD. ECF No. 39-5 at ¶ 9. At this appointment, Defendant Loranth avers that Plaintiff "did not complain of any pain associated with his hiatal hernia or GERD." *Id.* After examining Plaintiff, Defendant Loranth renewed Plaintiff's medications, including Prilosec. *Id.* Additionally, Defendant Loranth discussed with Plaintiff "the importance of losing weight in order for him to have less acid reflux and help his hiatal hernia." *Id.* Plaintiff's medical records reflect Defendant Loranth's assertions and indicate that Plaintiff "has a hiatal hernia [that] was scoped and has non-formulary for Prilosec [and is] [d]oing fine." ECF No. 39-6 at 7. Additionally, the records indicate Plaintiff had chronic esophageal reflux. *Id.* at 9.

After his initial consultation with Plaintiff, Defendant Loranth represents that Plaintiff continued to receive medical treatment and did not report "problems related to his hiatal hernia or GERD until July 26, 2011." ECF No. 39-5 at ¶ 10. Defendant Loranth attests that he evaluated Plaintiff on July 26, and Plaintiff informed him that the Prilosec was working fine but he thought his condition was getting worse. *Id.* at ¶ 11. After the examination, Defendant Loranth represents:

> [He] told [Plaintiff he] would order an esophagogastroduodenoscopy (EGD) and would submit a consult for him to see the General Surgeon in regard to his worsening condition. [He] listed the consult as "Medically Necessary -- Non-Emergent" since it was not life-threatening and did not require immediate medical care or treatment. This label is in accordance with Program Statement 603I.04(7)(b), Patient Care, which defines Medically Necessary-Non-Emergent as "medical conditions that are not immediately life-threatening but which without care the inmate could not be maintained without significant risk of: [s]erious deterioration leading to premature death; [s]ignficant pain or discomfort which impairs the inmate's participation in activities of daily living."

*Id.* A copy of the consultation request was submitted by Defendants, and as Defendant Loranth represents, it indicates the procedure is medically necessary but non-emergent. ECF No. 39-7 at 11. Additionally, the July 26, 2011 clinical encounter note indicates that Plaintiff told Defendant Loranth that his hiatal hernia was under control with his medications but the condition was getting worse. ECF No. 39-6 at 68. Notes indicate Defendant Loranth recommended an EGD and his status would be checked thereafter. *Id.* Additionally, notes indicate Plaintiff would "be seeing the surgeon." *Id.*

Until Plaintiff saw Defendant Loranth again in July, his hiatal hernia was noted in his medical records, but there was no indication that it was life threatening or that Plaintiff was in need of surgery for it. *See* ECF No. 39-6 at 12-68. However, contrary to Defendant Loranth's representation, a clinical encounter note indicates Plaintiff "reported concern about a hernia and mid thoracic pain" during an August 17, 2010 appointment. *Id.* at 42. During this August appointment, Plaintiff's "chief complaint" was back pain and on examination "no hernia palpated." *Id.* Plaintiff had a total of 23 clinic encounters between his initial consultation with Defendant Loranth and his July 26, 2011 examination. *See id.* at 12-68. During that time frame, Plaintiff reported the following medical ailments: skin problems, a cough, aching feet, allergies, back pain, esophageal reflux, sore throat, right trapezius pain, sinus drainage, and other ailments. *See id.* Plaintiff also had oral surgery during this time frame where a "lump was removed from [his] left lower jaw/gum area." *Id.* at 50. Thereafter, Defendant Loranth represents that Plaintiff was seen on August 18, 2011 by a General Surgeon who recommended an EGD be performed. ECF No. 39-5 at ¶ 11; ECF No. 39-6 at 73. On August 18, 2011, Plaintiff was examined by Dr. Kabil Fam of Lake City Community

Hospital, and after the examination, Dr. Fam found no evidence of hernias but recommended Plaintiff have an EGD. ECF Nos. 39-7 at 12-13.

Defendant Loranth maintains that the EGD was placed on hold because Plaintiff developed a severe case of vertigo. ECF No. 39-5 at ¶ 13. An emergency encounter with health services indicates that on September 21, 2011, Plaintiff woke up with "dizziness, nausea, [and] vomiting." ECF No. 39-6 at 74. Clinical encounters from September 23, 25, 26, and 30, 2011, and from October 6, 2011 indicate that Plaintiff continued to experience the dizziness. *Id.* at 80-101. Consequently, Defendant Loranth avers that medical staff ordered Plaintiff have a Magnetic Resonance Imaging (MRI) "to rule out possible causes of his vertigo including multiple sclerosis and neoplasm." *Id.* A consultation request for the MRI occurred on October 6, 2011, and on December 4, 2011, Plaintiff had an MRI of his brain. ECF Nos. 39-6 at 106; 39-7 at 15, 17. Defendant Loranth reviewed the MRI results which showed Plaintiff had chronic sinusitis. ECF No. 39-5 at ¶ 13. After Plaintiff's vertigo was under control, Defendant Loranth maintains that he submitted a consult on October 19, 2011, for Plaintiff to have the recommended EGD. ECF No. 39-5 at ¶ 14.

Defendant Loranth attests that Plaintiff was admitted to the hospital on February 15, 2012 for the EGD, and a clinical encounter from February 15, 2012, demonstrates that Plaintiff was transported to a hospital in Manning, South Carolina and had the EGD which "revealed a hiatal hernia, which the inmate told medical staff he had already been diagnosed with." ECF Nos. 39-5 at ¶ 19; 39-6 at 121. Defendant Loranth represents that though the EGD report did not list a recommendation by the General Surgeon, an administrative note "indicated that the hernia could be repaired after [Plaintiff's] numbness issue was resolved." ECF No. 39-5 at ¶ 19. Additionally, Defendant Loranth maintains that the "Surgeon

13

recommended that [Plaintiff] take nonsteroidal anti-inflammatory drugs (NSAIDs) and rest." *Id.* Medical notes support Defendant Loranth's representation regarding when the hernia could be repaired and the surgeon's other recommendations. *See* ECF No 39-6 at 122. Prior to being admitted to the hospital on February 15, 2012, Plaintiff reported to medical services on February 14, 2012, complaining of right flank and lumbar pain. *See* ECF No. 39-6 at 115-19.

Thereafter, Defendant Loranth avers that on May 31, 2012, Plaintiff had a follow-up appointment with the consultant General Surgeon and Plaintiff indicated to him that "his prescription for [Prilosec] was giving him some relief during the day, [that] [h]e indicated that he had experienced reflux for more than one year, and it was getting worse, but he felt fine on that day." *Id.* at ¶ 24. Defendant Loranth attests that "[t]he General Surgeon indicated [Plaintiff] was a candidate for a laparoscopic anti-reflux procedure known as the Nissen fundoplication; however, prior to the procedure he would need a pH monitoring study and esophageal manometry study." *Id.* Additionally, Defendant Loranth represented that "[t]he Surgeon noted that [Plaintiff] understood that such procedure would be contingent upon approval by his primary care provider, [Defendant Loranth]." *Id.* The May 31, 2012 follow-up record indicates that the EGD "showed a fairly large hiatus hernia." ECF No. 39-7 at 38. As Defendant Loranth represents, Dr. Alejo found: "[Plaintiff] is a candidate for a laparoscopic anti-reflux procedure [but] [p]rior to scheduling this, he would need a pH monitoring study, as well as an esophageal manomatry study." *Id.* at 40.

According to Defendant Loranth's Declaration, on September 19, 2013, a barium esophagram study was performed on Plaintiff, and the results were unremarkable except for the presence of a small hiatal hernia. ECF No. 39-5 at ¶ 30. A September 19, 2013 clinical

14

encounter as well as the results of Plaintiff's esophagram buttress Defendant Loranth's representation. ECF No. 39-6 at 189; ECF No. 39-7 at 46. Specifically, the results of the esophagram indicate "[s]mall hiatal hernia, otherwise unremarkable esophagram." ECF No. 39-7 at 46.

Defendant Loranth attests that "[o]n September 23, 2013, [Plaintiff] had an appointment with a consultant GI Surgeon to be evaluated for acid reflux procedure, i.e., the Nissen fundoplication procedure, and to review the results of the barium esophagram study." ECF No. 39-5 at ¶ 31. During the consultation, Defendant Loranth attests that "the Surgeon noted the symptoms [Plaintiff] reported, and added that some of these symptoms were atypical, such as abdominal cramps and sharp pains, which occurred when he laid down or laughed." *Id.* Additionally, Defendant Loranth avers that "[t]he Surgeon also noted that the results of [Plaintiff's] barium esophagram study were normal, except for a small hiatal hernia." *Id.* Defendant Loranth represents that "[t]he Surgeon recommended that [Plaintiff] have a consultation with gastroenterology medicine for evaluation of atypical GERD and then see him again for another surgical evaluation." *Id.* Again, medical notes indicate the accuracy of Defendant Loranth's representations in his Declaration to the court. ECF No. 39-7 at 47-51. On November 20, 2013, an esophageal manometry study was performed on Plaintiff, and the result was a normal motility study. ECF No. 39-5 at ¶ 32; *see also* ECF No. 39-7 at 55.

After the studies were finished, Defendant Loranth attests that "on December 17, 2014, [Plaintiff] had the Nissen fundoplication procedure without any complications." ECF No. 39-5 at ¶ 42. The undersigned has thoroughly reviewed all medical records submitted to the court by both parties. There is no evidence of a medical opinion or other indication on

15

any of Plaintiff's medical records that the December 17, 2014 hernia repair procedure was medically necessary until August of 2014. After Plaintiff lost weight for the surgery, on September 16, 2014, Defendant Loranth submitted a consultation request for Plaintiff to have the hernia repair surgery "at the earliest possible date." ECF No. 39-7 at 74. The undersigned notes that in a November 5, 2012 clinical encounter Defendant Loranth recognized the Plaintiff needed the "Nissen fundoplication" procedure but that "it [was] important that the proper surgeon be consulted." ECF No. 39-6 at 161. At that time, Plaintiff reported a 4 on the pain scale. *Id.* Until August of 2014, all tests performed on Plaintiff had normal results, and nothing in the record indicates that the surgery should have occurred sooner because of Plaintiff's medical condition. Plaintiff was regularly treated by medical staff, was tested as a surgical candidate, and met with specialists in the time leading up to his surgery. Therefore, the undersigned finds that there was not an unreasonable delay in the hernia repair surgery that led to permanent loss.

To the extent Plaintiff maintains that he should have had the hernia repair surgery sooner and not been treated with medications in the interim, such a claim is more akin to a medical malpractice claim. In *Estelle*, the Supreme Court held that "a complaint that a physician had been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." 429 U.S. at 106. An assertion of mere negligence or malpractice is not enough to state a constitutional violation, plaintiff must allege and demonstrate "[d]eliberate indifference. . . by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d at 851. However, a difference of medical opinion is insufficient to establish deliberate indifference. *Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994) (finding that although the provision of medical care by prison officials is

not discretionary, the type and amount of medical care is discretionary). As the Fourth Circuit Court of Appeals articulated:

> Negligence or malpractice in the provision of medical services does not constitute a claim under § 1983. The standard for § 1983 liability is deliberate indifference to serious medical needs. Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.

*Wright v. Collins*, 766 F.2d at 849 (internal citations omitted). The undersigned finds that a review of the evidence demonstrates that Plaintiff has received consistent care and has not experienced delays in medical treatment that have led to a lifelong handicap or permanent loss. Specifically, the undersigned finds that the medical conditions concerning Plaintiff's hiatal hernia were addressed and treated. Accordingly, the undersigned recommends that Plaintiff's medical indifference claim be dismissed.[6] Therefore, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's medical indifference claims.

    C.    Qualified Immunity

Defendants assert that they are entitled to qualified immunity for performing discretionary functions. ECF No. 39 at 19-20. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

---

[6] Though the analysis in section B mainly concerns Defendant Loranth, the undersigned finds that Plaintiff has failed to demonstrate any Defendant, including Defendants Cruz, Johnson, and Urrea, were deliberately indifferent to his medical needs. Therefore, the undersigned recommends that Plaintiff's cause of action for deliberate indifference be dismissed with prejudice for all named Defendants.

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct.  *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009).  The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case.  *Id.* at 236.  In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition."  *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit."  *Id.* (citations and internal quotation omitted).

The record before the court shows that these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Defendants did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that these Defendants be granted qualified immunity.[7]

IV.     Conclusion and Recommendation

Accordingly, based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 39, be granted and that this case be dismissed.

IT IS SO RECOMMENDED.

---

[7] Based on the undersigned's recommendations, it is unnecessary to address Defendants' remaining arguments regarding supervisory liability and absolute immunity. *See* ECF No. 39 at 29-34.

December 1, 2015                                                        Kaymani D. West
Florence, South Carolina                                         United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

19